## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

|  |  |
|---|---|
| **AMY ALLOWAYS**<br>434 Hillview Drive, Apt. 104<br>Linthicum, MD 21090<br>*Resident of Anne Arundel County* | Class/Collective Action Claim |
| **MISCHELE HIGGINSON**<br>2418 Golders Green Court<br>Windsor Mill, MD 21144<br>*Resident of Baltimore County* | Jury Trial Requested |
| and | |
| **CHRISTY MCGHEE**<br>7971 Riggs Road, Apt. 9<br>Hyattsville, MD 20783<br>*Resident of Prince George's County* | Civil Action No.: |
| Plaintiffs, | |
| ***Individually and on Behalf of All<br>Similarly Situated Employees,*** | |
| v. | |
| **THE CRUISE WEB, INC.**<br>3901 Calverton Boulevard, Suite 350<br>Calverton, MD 20705 | |
| Serve:  Frans G. Hansen, R.A.<br> 1 Old Station Road<br> Severna Park, MD 21146 | |
| Defendant. | |

Amy A

## CLASS AND COLLECTIVE COMPLAINT FOR WAGES OWED

AMY ALLOWAYS, MISCHELE HIGGINSON and CHRISTY MCGHEE, Plaintiffs, by

and through their undersigned counsel and The Law Offices of Peter T. Nicholl, on behalf of

themselves and all others similarly situated, hereby submit their Complaint against THE CRUISE WEB, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, treble damages, interest, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

The Cruise Web, Inc. ("Defendant") is a travel agency that specializes in planning cruises. Defendant arranges travel accommodations with various cruise lines and receives a predetermined fee from each reservation made through its services. Defendant hired Plaintiffs and other similarly situated employees to work as cruise consultants ("consultants"). Their duties centered on booking reservations and providing customer service. Plaintiffs and other consultants were tasked with selling vacations to prospective clients. This was accomplished through leads generated from Defendant's website and incoming calls.

Consultants were responsible for ensuring the accompanying paperwork related to each vacation package was completed and processed correctly. Defendant maintained two (2) separate information systems to facilitate this process. Consultants had to send a customer's information to Defendant's client services department using the software "Win Cruise." A Microsoft Word template was then utilized to enter a customer's information. Completing these tasks entailed a vast amount of data entry. Plaintiffs and other consultants were required to complete these tasks in accordance with Defendant's procedures. It was always required that they follow Defendant's strict

protocols. Consultants were not permitted to exercise independent judgment and did not have the authority to act on their own.

Plaintiffs and other consultants were also responsible for answering any questions a customer had. This primarily entailed answering various inquiries from customers regarding the details of their vacations.  Their duties centered on making and receiving calls.  The manner in which they handled these calls was dictated by Defendant's procedures. Consultants were required to follow these procedures precisely.

The nature of Defendant's business resulted in Plaintiffs and other consultants having to regularly work overtime. Cruise consultants were told they were paid on a commission basis, leading them to work nonstop in hopes of selling as many vacation packages as possible. In order for consultants to receive their commissions, the paperwork related to each package had to be submitted within twenty-four (24) hours of the call. Plaintiffs and other consultants had to continuously make and field calls from new customers while simultaneously completing the reservation paperwork needed to meet their deadlines.

The calls were constant; the phones were always ringing. It was routine for Plaintiffs and other consultants to handle dozens of calls each day. The paperwork related to each reservation package was also voluminous. There were multiple documents to compile. Processing all of these documents was a tedious process which could take hours to complete.

The combination of all their assignments and the time it took to complete them resulted in Plaintiffs and other consultants having to work non-stop. They consistently worked through their lunch break and regularly left work well after the times their shifts were scheduled to end. Their heavy workload demanded that they work many hours outside of their regular schedules.

Other factors contributed to the excessive hours worked by consultants. Defendant attracts customers from around the world. Due to time differences, Plaintiffs and others similarly situated would frequently have to answer customer inquiries before and after their scheduled shifts. To respond to these inquiries, it was typical for Plaintiffs and other consultants to arrive at work well in advance of the time their shifts were to begin. Staying hours after their shifts were supposed to end was also routine. Working overtime was constant throughout their employment.  The demands of their employment left them no other choice.

Defendant was well aware of the overtime hours its consultants worked.  Defendant failed to properly compensate Plaintiffs and other consultants for their hours worked. This was accomplished through two (2) illegal compensation schemes. The first was specific to Plaintiffs' and other consultants' first six (6) months of employment. This was considered their training period. During this period, consultants were paid according to Defendant's "Training Period Commission Plan." They were paid a fixed income. They would also receive commissions if they reached certain sales goals. These commissions were always paid out after the training period ended.  Plaintiffs and other consultants never received commissions while training was in session.

Many cruise consultants did not meet their commission goals. Even when they did, the commission payments never constituted a significant portion of their pay. Their fixed income always outweighed any commissions received.  In actuality, consultants were all paid a salary.

Defendants has attempted to hide the true manner in which its employees were paid. Rather than acknowledge that the payments made during the first six (6) months were a salary, Defendant falsely described these bi-weekly payments as "commissions." This description was a façade. Cruise consultants were paid the same fixed amount each pay period. The sales they made during this period barely impacted their compensation. Even if consultants met Defendant's sales goals, the

commission payments they received never exceeded fifty percent (50%) of their pay. They were also not eligible to receive the commissions during the actual training period. The commission sales exemption is not applicable. Therefore, Plaintiffs and all other consultants should have been paid overtime while in training. They worked overtime consistently during training. Their duties did not exempt them from the overtime requirements.

Once training concluded, consultants that stayed on with Defendant were underpaid in other ways. They were transitioned to Defendant's "Floating Draw Commission Pay Plan." This plan was just another scheme. It resulted in consultants failing to receive the required minimum wage for employees paid on a commission basis. They routinely earned less than ten dollars and eighty-eight cents ($10.88) per hour during weeks when they worked overtime. Defendant's commission plan was not *bona fide*. It conflicted with both federal and state wage laws.

Plaintiffs were stripped of their wages. Numerous others have been effected. All of Defendant's cruise consultants were denied the wages they rightfully earned. Through its "commission" plans, Defendant evaded the proper payment of wages owed to its consultants. These plans are at odds with the FLSA, MWHL and the MWPCL. Defendant continues to engage in its unlawful activity. This mandated the filing of this Complaint.

## THE PARTIES

1.      Plaintiff Amy Alloways (hereinafter, "Alloways") is an adult resident of Anne Arundel County, Maryland.

2.      Plaintiff Mischele Higginson (hereinafter, "Higginson") is an adult resident of Baltimore County, Maryland.[1]

---

[1] During her employment, Plaintiff Higginson's last name was Young.

3.      Plaintiff Christy McGhee (hereinafter, "McGhee") is an adult resident of Prince George's County, Maryland.

4.      Defendant The Cruise Web, Inc. (hereinafter, "Defendant") is an incorporated for-profit business.

5.      Defendant is in the business of arranging travel accommodations.

6.      Defendant's focus is planning cruises.

7.      Defendant works with multiple cruise lines and for that work receives a fee for all reservations made through its services.

8.      Defendant maintains its principal corporate office in Calverton, Maryland.

9.      Plaintiffs and others similarly situated primarily performed their work duties at Defendant's Calverton office.

10.     Plaintiffs and others similarly situated held the title of cruise consultant.

11.     At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce based on the duties they performed as part of their employment with Defendant.

12.     Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL.

13.     Defendant is also subject to the FLSA, MWHL and the MWPCL due to the amount in revenues generated.

14.     Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

15.     At all times relevant to this complaint, Defendant fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), the MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

16.     Plaintiffs and others similarly situated worked as employees for Defendant under the FLSA, MWHL and the MWPCL.

17.     From November 29, 2016 until June 30, 2017, Plaintiff Alloways was employed with Defendant.

18.     From June 1, 2016 until June 1, 2017, Plaintiff Higginson was employed with Defendant.

19.     From November 29, 2016 until June 26, 2017, Plaintiff McGhee was employed with Defendant.

20.     At all times relevant to this Complaint, Defendant controlled the administration of its business.

21.     Defendant controlled the hours worked by Plaintiffs and other similarly situated employees.

22.     Defendant set Plaintiffs' schedules and the schedules of other cruise consultants.

23.     Defendant controlled and supervised the work performed by Plaintiffs and other consultants.

24.     Defendant was actively engaged in the management and direction of Plaintiffs and members of the putative class.

25.     Defendant had the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

26.     Defendant made all decisions relating to Plaintiffs' and other cruise consultants' rate and method of pay.

27.     Plaintiffs and all those similarly situated recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

28.     Original jurisdiction in this Honorable Court is expressly provided by the FLSA, 29 U.S.C. § 216(b).  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

29.     Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

30.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

31.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

32.     This Honorable Court has personal jurisdiction over Defendant. Defendant is incorporated under the laws of Maryland and conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

33.     Defendant is in the business of arranging travel accommodations. Defendant specializes in planning cruises. Defendant works with various cruise lines and receives a percentage of all reservations made through its services.

34.     Plaintiffs and other similarly situated employees were hired as cruise consultants ("consultant(s)"). They were supposed to receive a commission for each reservation booked.

35.     From November 29, 2016 until June 30, 2017, Plaintiff Alloways was employed as a consultant.

36.     From approximately June 1, 2016 until June 1, 2017, Plaintiff Higginson worked as a consultant.

37.     Plaintiff McGhee was employed as a consultant from November 29, 2016 until June 26, 2017.

38.     Plaintiffs' and other consultants' duties centered on customer service. Their duties were identical. Their tasks primarily involved booking vacations on behalf of Defendant's customers. This entailed working with third-party cruise lines to assist customers with reserving domestic and international travel.

39.     Cruise consultants were responsible for various administrative tasks. They were required to complete vast amounts of paperwork related to each vacation package.  They were responsible for verifying a customer's contact information and entering this information into Defendant's system. They also had to gather documents related to payment.

40.     Consultants were responsible for servicing customers from the point of sale onward. This entailed answering any questions a customer had.

41.     Customers were acquired from leads generated from the internet. Prospective customers have the ability to enter their travel destination and accompanying dates on Defendant's website. From there, an estimate would automatically generate. Potential customers were then notified that a consultant would be contacting them shortly. A customer's contact was processed into Defendant's database and then assigned to a queue.

42.     The assignments were based on the estimated cost of a cruise. There were different queue numbers assigned based on the total expense of a vacation. For instance, queue 3 was reserved for expensive, luxury cruises. Senior cruise consultants typically handled these types of cruises.

43.     Queues 1 and 2 were reserved for prospective clients interested in lower-priced cruises. Plaintiffs and others similarly situated typically assisted these clients.

44.     Before Plaintiffs and other consultants could contact a prospective client, they would check Defendant's system to ensure that another consultant had not serviced the client previously. Once this was confirmed, Plaintiffs and other consultants would make the initial call.

45.     Plaintiffs and other consultants also had to answer incoming calls from new clients. These calls were another means in which Defendant generated business.

46.     When answering new calls and calling back leads assigned from the queues, Plaintiffs and others similarly situated were required to follow Defendant's script.  Defendant demanded that they follow this script precisely. They were strictly prohibited from discussing information not delineated within the script.

47.     Plaintiffs and other consultants would follow this script while simultaneously recording the details specific to each client.  This primarily involved obtaining information regarding a client's background.

48.     Plaintiffs and other consultants were also responsible for the administrative tasks pertaining to each sale. Consultants were given twenty-four (24) hours to secure all the information needed to process a sale. This included having to complete and send paperwork to Defendant's client services department.

49.     Plaintiffs and other consultants also had to properly format the paperwork within the twenty-four (24) hour period. Defendant required the reservation paperwork to be submitted in two

(2) separate formats. One was in the form of a template specific to Microsoft Word. The other template was aligned with Defendant's software system, "Win Cruise."

50.     Failure to complete all the required tasks within the twenty-four (24) hour deadline would lead Plaintiffs' and other consultants' submissions to be considered late. Late submissions could lead to repercussions.  This included not receiving their full commissions.

51.     Such repercussions led Plaintiffs and others similarly situated to consistently work hours outside of their regular schedules.

52.     Although they were typically scheduled to work from 10:00 a.m. to 7:00 p.m. Mondays through Fridays, the demands of their employment caused Plaintiffs and other consultants to regularly work in excess of their scheduled hours.

53.     Completing all of the paperwork related to their assignments was a very arduous task. It entailed having to compile and complete a substantial numbers of documents. Formatting these documents would take additional time. The entire process was both tedious and time-consuming.

54.     Plaintiffs and other consultants were solely responsible for these tasks. They did not receive any help. Although Defendant maintained a client services department, employees in that department were only responsible for overseeing the consultants' work. Their primary focus was to ensure that Plaintiffs and other consultants properly completed and submitted their paperwork; they were not tasked with assisting the consultants in doing so.

55.     Completing all of the necessary paperwork in conjunction with having to handle all of the customer calls caused Plaintiffs and other consultants to carry a heavy workload.  The volume of Defendant's business required that they work non-stop.

56.     Plaintiffs and other consultants were also responsible for all customer service related tasks. They were required to answer any questions a customer had. Answering the questions would

often take longer than expected. It was common for customers to have multiple inquiries regarding their vacations. Responding to all of the inquiries led Plaintiffs and other consultants to work overtime regularly.

57.     It was impossible for Plaintiffs and other consultants to complete their duties within their scheduled hours. Defendant did not employ a sufficient number of consultants to handle the needs of its business.  There were simply not enough employees to handle all of the work.  This resulted in Plaintiffs and other consultants having to work additional hours.

58.     Consultants regularly worked through their entire shifts without a break. They also consistently stayed at work well past the times their shifts were scheduled to end.  It was common for Plaintiffs and other consultants to work until 8:00 p.m. or later. They had to regularly work on the weekends as well.  This was the only way they could complete all of their tasks.

59.     Defendant made clear that tending to the needs of clients should always be a primary task. Defendant explained to its consultants that this was a top priority. This priority regularly resulted in consultants having to work overtime.

60.     The nature of Defendant's business also caused Plaintiffs and other consultants to work overtime. Defendant serviced clients throughout the world. This required Plaintiffs and other consultants to communicate with clients in different time zones. They would often have difficulty contacting clients within scheduled business hours. This would lead them to have to contact customers throughout all hours of the day.[2]

61.     All of these conditions contributed to Plaintiffs and others similarly situated having to work overtime. Working over forty (40) hours per week was integral to their employment.

---

[2] Plaintiff Alloways often found herself communicating with a customer from Hong Kong until as late as 11:00 p.m.  Due to the differing time zones, Alloways often found herself communicating with customers at all hours of the day.

62.     Defendant was well aware that Plaintiffs and other cruise consultants worked overtime regularly.

63.     Defendant suffered and/or permitted Plaintiffs and others similarly situated to work more than forty (40) hours per week.

64.     Plaintiffs and other cruise consultants were required to track their work hours. This was completed through Defendant's timekeeping system, Automatic Data Processing ("ADP"). Plaintiffs and other consultants used this software regularly.

65.     Plaintiffs and other similarly situated employees routinely "clocked in" at the start of their shifts and consistently "clocked out" when their shifts ended.

66.     Plaintiffs' and consultants' duties were performed at the discretion of Defendant's managers.

67.     Plaintiffs and others similarly situated were supervised by management officials at all times.

68.     Plaintiffs' and other consultants' duties were always carried out in accordance with Defendant's strict protocols. Consultants lacked independent judgment and the authority to act on their own.

69.     Plaintiffs and other similarly situated employees were required to follow Defendant's instructions. Following these instructions was simply a matter of routine.

70.     Plaintiffs and others similarly situated satisfied the requirements of their positions.

71.     Plaintiffs and other consultants performed their duties to the extent required by Defendant.

72.     Plaintiffs and other consultants performed their duties to the benefit of Defendant and its customers.

73.     Plaintiffs and other consultants were all paid in a similar manner. They were paid bi-monthly, on the first and fifteenth of every month.

74.     For the first six (6) months, Plaintiffs and others similarly situated were paid in accordance with Defendant's "Training Period Commission Plan." They were paid the gross amount of one thousand four hundred and fifty-eight dollars ($1,458.00) bi-monthly, which was derived from an annualized rate of thirty-five thousand dollars ($35,000.00). This sum was paid to Plaintiffs and other consultants regardless of how many sales they made, or the number of hours they worked, during the six (6) month training period.

75.     Consultants could also earn a commission at the end of the six (6) months. If consultants generated up to sixteen thousand three hundred and thirty-three dollars ($16,333.00) in sales, they were entitled to an additional commission override at a rate of thirty-seven (37%) of all net agency commissions. Plaintiffs and other consultants were not entitled to this payment until after the six (6) month training period was over.

76.     Defendant's Training Period Commission Plan is not a *bona fide* plan. Regardless of how Defendant describes the training rate, the base payment was a salary. Plaintiffs and other consultants received the same fixed amount of compensation each week. Said compensation had no relation to sales. Therefore, Plaintiffs and other consultants should have received overtime wages.

77.     Even if consultants met their sales goal during the training period, they were still not covered by the commission sales exemption since more than fifty percent (50%) of their pay was derived from a salary.  All commissions that consultants could have potentially earned during the training period would still not constitute at least fifty percent (50%) of their pay.

78.     During the six (6) month training period, Plaintiff Alloways did not meet her sales goal. Therefore, she did not receive any commissions at the close of training. She only received her

"base commission" pay, which in reality was a salary. Since Alloways was not paid any commissions, she should have received overtime wages.

79.     During training, Plaintiff Higginson did meet her sales goal. At the conclusion of the six (6) month training period, Higginson received approximately two thousand five hundred dollars ($2,500.00) in commissions. She received this payment in addition to her base commission salary of seventeen thousand five hundred dollars ($17,500.00). The two thousand five hundred dollars ($2,500.00) subsequently paid out represented less than fifteen percent (15%) of her earnings during the six (6) month period. Therefore, she should have also received overtime pay.

80.     During the six (6) month training period, Plaintiff McGhee met her sales goal. Once training ended, she received approximately four thousand five hundred dollars ($4,500.00) in commissions. During the same six (6) month period, McGhee also received her base commission salary of seventeen thousand five hundred dollars ($17,500.00). The four thousand five hundred ($4,500.00) commission payment represented approximately twenty-five percent (25%) of her earnings during training. Therefore, McGhee was entitled to overtime for that period.

81.     Regardless of whether or not they met their sales goals, it is clear Plaintiffs did not meet the commission sales exemption. They failed to receive commissions altogether during training. Any commissions they received following training were also comparatively low relative to their fixed salaries. Therefore, Plaintiffs and all other similarly situated consultants were entitled to overtime pay for any overtime worked during training.

82.     Defendant failed to properly pay its consultants.  Plaintiffs and other consultants were not compensated at all for the overtime they worked for the first six (6) months of their employment. They were consistently cheated out of their wages.

83.     Plaintiffs and others similarly situated were cheated in other ways.  Once training was over, consultants were transitioned to Defendant's "Floating Draw Commission Pay Plan." This plan was also unlawful.

84.     The plan failed to ensure that Plaintiffs and other consultants received proper minimum and overtime wages.

85.     Defendant knew its commission plan was not *bona fide*. The plan failed to meet the requirements of the FLSA.

86.     During weeks when they worked overtime, Plaintiffs' and other consultants' commission earnings often did not exceed one and one-half (1.5) times the minimum wage.

87.     During weeks when they did not work overtime, Plaintiffs' and other consultants' commission earnings did not meet the minimum wage requirements. They were paid well below the required Federal minimum wage of seven dollars and twenty-five cents ($7.25) and the Maryland minimum wage of eight dollars and seventy-five cents ($8.75) for multiple hours of work.

88.     Defendant's unlawful payment policies prevented Plaintiffs and others similarly situated from receiving the minimum wage for all hours worked.

89.     These same policies also resulted in its consultants being denied the overtime wages they earned.

90.     There is no bona fide dispute that Plaintiffs and others similarly situated are owed overtime and minimum wages.

91.     At no time did Plaintiffs' and other consultants' duties include work that would make them exempt from the FLSA, MWHL and the MWPCL provisions requiring that they be paid overtime and minimum wages.

92.     Defendant enacted its unlawful practices to evade both Federal and Maryland wage laws.

93.     These practices caused Plaintiffs and others similarly situated to be paid improperly.

94.     Defendant was well aware that Plaintiffs and other similarly situated employees were not being paid correctly.

95.     Defendant knew that its payment policies prevented its consultants from being paid properly for all hours worked.

96.     In bad faith, Defendant permitted Plaintiffs and others similarly situated to work without proper compensation.

97.     Thus, on behalf of themselves and all other cruise consultants, Plaintiffs seek their wages owed and all other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

98.     Plaintiffs commence this collective action on behalf of themselves and those similarly situated.

99.     "Those similarly situated" include all of Defendant's cruise consultants ("consultants").

100.    Plaintiffs and other consultants were all subject to the unlawful pay practices described in this Complaint.

101.    These similarly situated employees are all members of the putative class.

102.    The FLSA requires employers to compensate employees such as Plaintiffs and others similarly situated with at least the required minimum wage rate for each hour of work and overtime wages for all hours worked over forty (40) in a given workweek.

103.   Defendant knew or should have known that Plaintiffs and others similarly situated were entitled to overtime wages during their training period.

104.   Defendant failed to compensate Plaintiffs and other similarly situated employees with any overtime wages for the hours they worked over forty (40) during training.

105.   Plaintiffs demand damages reflecting overtime ("time and a half") wages for all hours worked over forty (40) in every workweek within the training period.

106.   The FLSA requires employers to compensate commissioned employees at a rate of at least ten dollars and eighty-eight cents ($10.88) per hour for all hours worked over forty (40) in a workweek.

107.   Defendant knew that Plaintiffs and similarly situated employees routinely worked over forty (40) hours per week.

108.   Defendant suffered or permitted Plaintiffs and other cruise consultants to earn less than ten dollars and eighty-eight cents ($10.88) per hour during weeks when they worked over forty (40) hours.

109.   Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek in which they made less than ten dollars and eighty-eight cents ($10.88) per hour.

110.   Defendant failed to compensate Plaintiffs and other similarly situated employees correctly for the overtime hours they worked.

111.   Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times the minimum wage for all hours worked over forty (40) in any workweek in which they did not earn ten dollars and eighty-eight cents ($10.88) per hour within the applicable statute of limitations.

112.    Plaintiffs make these same demands on behalf of all members of the putative collective class.

113.    Plaintiffs consent to be party plaintiffs in this matter; Plaintiffs' consent forms are attached to this Complaint as Exhibits A, B and C.

114.    It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

115.    There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

116.    These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

117.    Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the collective class.

118.    Upon information and belief, others will choose to join Plaintiffs in this action against Defendant in order to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

119.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

120.    Plaintiffs bring this action on behalf of themselves and other current and former employees that served as cruise consultants for Defendant and were subject to the following practices and policies:

121.    Denial of overtime wages under MWHL for all hours worked over forty (40) in a single workweek; and

122.    Denial of all wages owed to Plaintiffs and other similarly situated employees at the termination of their employment, in violation of the MWPCL.

123.    The classes Plaintiffs seek to represent are defined as:

a.    *MWHL Class*: All individuals who are or were employed by Defendant as cruise consultants for any period ranging from three (3) years prior to the filing of the instant Complaint to the present and who were not paid the applicable minimum wage rate and overtime wages.

b.    *MWPCL Class*: All individuals who were, but are no longer, employed by Defendant as cruise consultants for any period ranging from three (3) years from when the instant Complaint was filed to the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek and thus, did not receive all wages owed to them before the termination of their employment.

124.    *Numerosity*: The individuals in the class are so numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, the class includes over one hundred (100) current and former employees who are readily identifiable through Defendant's pay records.

125.    *Commonality*: There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiffs and the classes are:

a.    Whether the MWHL class is similarly situated because they were subject to Defendant's common payment policies and practices during the training period;

b. Whether the MWHL class is similarly situated because they were subject to Defendant's floating draw commission payment plan;

c. Whether Defendant employed the MWHL class within the meaning of MWHL;

d. Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL class the requisite minimum wage and overtime compensation for hours worked in excess of forty (40) hours per workweek;

e. Whether Defendant's violations were willful;

f. Whether Defendant employed the MWPCL class within the meaning of the MWPCL;

g. Whether Defendant failed to provide Plaintiffs and other members of the MWPCL class with all wages due at the time their employment ended; and

h. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

126. *Typicality*: Plaintiffs' claims are typical of those of the classes. Each and every class member of both the MWHL class and the MWPCL class work or worked as a cruise consultant for Defendant. Each and every MWHL class member was subject to Defendant's unlawful Training Period Commission Plan during their first six (6) months. Each and every MWHL class member was subject to Defendant's Floating Draw Commission Payment Plan upon their completion of training. The MWHL class members all utilized the same timekeeping system. Defendant's application of its payment policies had the effect of not compensating its cruise consultants with

proper minimum and overtime wages. This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

127. *Adequacy*: Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of the law and the same damage theory. Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

128. *Predominance*: The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one (1) set of facts. This is based on Defendant's failure to pay overtime as required by MWHL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid.

129. This action is maintainable as a class action. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources. Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant the Cruise Web, Inc.*

### Count I – *Violation of the FLSA: Failure to pay overtime wages to Plaintiffs and all members of the collective class who, during the course of this matter, opt-in to this lawsuit*

130. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

131.     Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

132.     As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for all hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiffs for these additional hours.

133.     Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime wages they are owed.

134.     There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

135.     Under the FLSA, Plaintiffs are entitled to these additional wages.

136.     All members of the putative class were subject to the same violations of the FLSA and thereby entitled to the same relief as described in this Complaint.

**Count II – _Violation of the FLSA: Failure to pay minimum wages to Plaintiffs and all members of the collective class who, during the course of this matter, opt-in to this lawsuit_**

137.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

138.     Plaintiffs are entitled to minimum wage under 29 U.S.C. § 206(a), which provides that employers must compensate their employees at a rate no less than seven dollars and twenty-five cents ($7.25) per hour.

139.     As described above, Plaintiffs have not received from Defendant compensation reflecting the minimum wage rate for all hours worked in a workweek.

140.     There were many weeks during the relevant time period that Defendant paid Plaintiffs and others similarly situated an hourly rate that fell below the minimum wage.

141.    Defendant willfully and intentionally failed to compensate Plaintiffs for the minimum wages they are owed.

142.    There is no bona fide dispute that Plaintiffs are owed minimum wages for work performed for Defendant.

143.    Under the FLSA, Plaintiffs are entitled to these wages.

144.    All members of the putative Collective class were subject to the same violations of the FLSA and thereby entitled to the same relief as described in this Complaint.

**Count III – *Violation of MWHL: failure to pay overtime wages to Plaintiffs, all those that are joined as a party in this matter and all members of the MWHL class***

145.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

146.    Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

147.    Pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under Md. Code Ann., Lab. & Empl. § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

148.    Plaintiffs have not received compensation from Defendant reflecting the prescribed overtime wage rate for all hours worked in excess of forty (40) in a week.

149.    Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

150.    There is no bona fide dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

151.    Under MWHL, Plaintiffs are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times their regular hourly wage rate.

152.    All members of the MWHL class were subject to the same violations of MWHL and thereby entitled to the same relief as described in this Complaint.

**Count IV – *Violation of MWHL: Failure to pay minimum wages to Plaintiffs, all those that are joined as a party in this matter and all members of the MWHL class***

153.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

154.    Pursuant to Md. Code Ann., Lab. & Empl. § 3-413, each employer shall pay an employee the greater of the Federal or State minimum wage.

155.    Plaintiffs have not received compensation from Defendant reflecting the minimum wage rate for all hours worked each week.

156.    Defendant willfully and intentionally did not compensate Plaintiffs for the minimum wages they are owed.

157.    There is no bona fide dispute that Plaintiffs are owed minimum wages for work performed for Defendant.

158.    Under MWHL, Plaintiffs are entitled to unpaid minimum wages from Defendant for all hours worked.

159.    All members of the MWHL class and added parties were subject to the same violations of MWHL and thereby entitled to the same relief as described in this Complaint.

**Count V – *Violation of the MWPCL: Failure to pay wages owed to Plaintiffs, all those that are joined as a party and all members of the MWCPL class at the termination of employment***

160.    Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

161.    Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501, *et. seq*., which provides that each employer shall pay

an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

162.   Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment as required by Md. Code Ann., Lab.   & Empl. §3-505(a).  This is specific to Defendant's failure to pay Plaintiffs the minimum and overtime wages to which they are entitled.

163.   Defendant willfully and intentionally did not compensate Plaintiffs for the wages owed to them and continued to violate the MWPCL.

164.   Under the MWPCL, there is no bona fide dispute that Plaintiffs are owed wages for work performed while employed by Defendant.

165.   All members of the MWPCL class were subject to the same violations of MWPCL and thereby entitled to the same relief as described in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a)   In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b)   In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a class action on behalf of Plaintiffs and members of the classes certified by motion during the course of this litigation;

c)   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d)   Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for the FLSA collective class;

e)   Designating the named Plaintiffs to act as class representatives on behalf of all members of the classes certified during the course of this litigation;

f)   Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

g)   Judgment against Defendant for its failure to pay Plaintiffs and members of the MWHL class in accordance with the standards set forth by MWHL;

h)   Judgment against Defendant for its failure to pay Plaintiffs, those appropriately joined to this matter and all members of the MWPCL class in accordance with the standards set forth by the MWPCL;

i)   Judgment against Defendant and classifying its conduct as willful and not in good faith;

j)   Judgment against Defendant and classifying Plaintiffs, the collective class, those appropriately joined in this matter and members of all classes certified as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

k)   An award against Defendant for the amount of unpaid minimum wages owed to Plaintiffs, those similarly situated and members of all classes certified;

l)   An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, those similarly situated and members of all classes certified, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs', all other similarly situated employees' and members of all certified classes' regular hourly rate for all overtime hours worked;

m)   An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, those similarly situated and members of all classes certified during the course of this litigation, whichever is deemed just and equitable by this Honorable Court;

n)   An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

o)   Leave to add additional plaintiffs to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

p)   All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III (29774)
bdavis@nicholllaw.com
Joseph E. Spicer, Esq. (27839)
jspicer@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:     (410) 244-8454

*Attorneys for Plaintiffs*