# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | |
|---|---|
| AMY ALLOWAYS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  **Civil Action No. CBD-17-2811** |
| | ) |
| THE CRUISE WEB, INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs Amy Alloways ("Alloways"), Michele Higginson ("Higginson"), and Christy McGee ("McGee") (hereinafter collectively "Plaintiffs"), on behalf of themselves and other similarly situated individuals, brought suit against Defendant The Cruise Web, Inc. ("Defendant"), alleging violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.*, for failure to pay minimum wage and overtime compensation. Pls.' Class & Collective Compl. for Wages Owed ("Pls' Compl."), ECF No. 1. Plaintiffs brought these claims as a collective action under the FLSA, 29 U.S.C. § 216(b), and as a class action under Federal Rule of Civil Procedure 23. Plaintiffs sought damages from Defendant, including liquidated and treble damages. On February 22, 2018, the Court approved the parties' Stipulation and Joint Motion Regarding Conditional Certification, which conditionally certified the case as a collective class action under the FLSA. *See* Paperless Order Approving Parties' Stipulation & Joint Mot. Regarding Conditional Certification, Messitte, J.,

1

ECF No. 21; Findings of Fact & Conclusions of Law & Order Approving Conditional

Certification of Class ("Order Approving Conditional Certification of Class"), ECF No. 23.

Plaintiffs and Defendant eventually reached a settlement, and on October 26, 2018, Plaintiffs

filed an unopposed motion seeking preliminary approval of the parties' agreement. Pls.'

Unopposed Mot. for Preliminary Approval of the Class Action Settlement & Unopposed Mot. to

Approve Settlement Agreement & Release of Wage Claims Under Fed. & Md. Law ("Pls.'

Unopposed Mot. for Preliminary Approval"), ECF No. 46. Attached to that motion as an exhibit

was a copy of the settlement agreement. Class Action Settlement Agreement ("Settlement

Agreement"), ECF No. 46-3. After a telephone conference, this Court granted the parties'

motion. Paperless Order Granting Mot. for Settlement ("Preliminary Approval Order"), Day, J.,

Dec. 20, 2018, ECF No. 48.

Currently pending before the Court is Plaintiffs' Unopposed Motion for Final Approval

of the Class/Collective Action Settlement ("Pls.' Unopposed Mot. for Final Approval"), ECF No.

50. Plaintiffs seek an order that: (1) grants final approval of the Settlement Agreement between

Plaintiffs and Defendant in the total gross amount of $60,000.00; (2) grants final certification of

the settlement class pursuant to Federal Rule of Civil Procedure 23; (3) grants final certification

of this matter as a collective action pursuant to 29 U.S.C. § 216(b); (4) approves a payment of

$32,000.00 to class counsel for their attorneys' fees and litigation expenses; (5) approves an

incentive payment totaling $6,000.00 to be divided as outlined in the Settlement Agreement to

Plaintiffs McGhee, Alloways, Higginson, and Derek Cade;[1] and, (6) dismisses this action with

prejudice. Pursuant to Federal Rule of Civil Procedure 23(f), a Final Fairness and Approval

---

[1] Plaintiff Derek Cade ("Cade") filed a consent to be a plaintiff in the lawsuit on April 10, 2018,
during the 60-day opt-in period. Consent to Be a Party Pl., ECF No. 29.

Hearing ("Fairness Hearing") took place on March 4, 2019, at which counsel for both parties were present. ECF No. 51. At the request of the Court, the parties each submitted supplemental filings with additional information necessary to make a determination on this matter. *See* Def.'s Supplemental Statement in Supp. of Unopposed Mot. for Final Approval, Mar. 4, 2019, ECF No. 52; Pls.' 2d Supplement in Supp. of Their Unopposed Mot. for Final Approval, Mar. 5, 2019, ECF No. 53.

For the reasons that follow, the Court hereby **GRANTS** Plaintiff's Unopposed Motion, **APPROVES** the parties' Settlement Agreement without modification, and orders this case be **DISMISSED WITH PREJUDICE**. A separate Order shall issue.

## I. Background

On September 20, 2017, Plaintiffs commenced this proceeding against Defendant alleging the commission payment plan used by Defendant to compensate Plaintiffs violated the FLSA, MWHL, and MWPCL. Pls.' Compl. ¶¶ 98-165. Defendant is a for-profit travel agency that "specializes in planning cruises." *Id.* at ¶¶ 4-9, 33. The named Plaintiffs and members of the proposed class all worked as "cruise consultants" ("Cruise Consultant(s)") for Defendant. *Id.* at ¶ 10. The job of a Cruise Consultant was to provide booking and customer support services to prospective clients seeking to reserve a cruise through Defendant's company. *Id.* at ¶¶ 38-50, 56. This involved cold calling, returning messages, data entry, completing and compiling paperwork, and other administrative tasks. *Id.* All the tasks for a particular reservation had to be completed within a twenty-four-hour window or it would be considered "late" and the Cruise Consultant could face "repercussions." *Id.* at ¶ 50. Defendant controlled the hours worked by each Cruise Consultant by managing their schedules, determining the number of Cruise Consultants it would employ, and setting "strict protocols" it expected to be followed at all times. *Id.* at ¶¶ 57-69.

According to Plaintiffs, this job was time consuming and often resulted in Cruise Consultants "regularly work[ing] through their entire shifts without a break" as well as "well past the times their shifts were scheduled to end" in order to complete tasks within the timeframe Defendant expected. *Id.* at ¶¶ 50-59. There were also "simply not enough employees to handle all of the work." *Id.* at ¶ 58. According to Plaintiffs, Defendant was "well aware" of the situation but was more concerned about its customers than its employees. *Id.* at ¶¶ 59, 61.

Defendant compensated its Cruise Consultants according to a commission payment plan.[2] *Id.* at ¶¶ 74, 83. For the first six (6) months of their employment, each Cruise Consultant was in a training period and compensated according to the "Training Period Commission Plan." *Id.* at ¶ 74. Under this plan, Cruise Consultants received the same set amount of pay on a bi-weekly basis regardless of the number of sales they made. *Id.* If they exceeded their sales expectations, a Cruise Consultant was supposed to receive a percentage of "all net agency commissions" as a commission paid out at the end of the training period. *Id.* at ¶ 75. According to Plaintiffs, while some Cruise Consultants received a commission at the end of the training period, it did not exceed fifty percent (50%) of their pay. *Id.* at ¶ 77. As a result of this payment plan and the number of hours each individual worked, Plaintiffs asserted that they were entitled to overtime in accordance with the FLSA and Maryland law. *Id.* at ¶ 81.

On December 18, 2017, Defendant filed an answer that denied Plaintiffs' allegations that it had knowingly violated the FLSA and Maryland's wage and hour laws. Def.'s Answer, ECF No. 11. Defendant also asserted a number of defenses. *Id.* at 15-19. These included the defense

---

[2] Plaintiffs' suit originally focused on both the commission payment plan for the Cruise Consultants' training period as well as the post-training period of employment. Pls.' Compl. ¶¶ 74, 83. However, on January 22, 2018, Plaintiffs voluntarily narrowed their suit to focus solely on the training period plan. Notice to Court re: Claims, ECF No. 16.

that, due to its commission payment plans, Plaintiffs were barred from bringing this suit as they were "exempt from overtime" pursuant to Section 7(i) of the FLSA[3] and the related provision under Maryland law. *Id.* at 17.

That same day, Plaintiffs filed a motion to obtain conditional class certification under the FLSA. Mot. for Conditional Certification of a Collective Class, ECF No. 10. Before the Court could rule on the motion, the parties filed a stipulation in which they agreed to the parameters of the proposed class in order "[t]o avoid the expense associated with motion practice at the preliminary stage of conditional certification, and to allow putative class members to make an informed decision regarding whether to join [the] lawsuit on a conditional basis . . . ." Stipulation & J. Mot. Regarding Conditional Certification ¶ 3, Dec. 22, 2017, ECF No. 14. After a telephone conference and additional materials were submitted, the Honorable Peter J. Messitte issued an order approving conditional certification of the class under the FLSA only and made certain findings of fact and conclusions of law. *See* Order Approving Conditional Certification of Class. This order conditionally certified the putative class as "[C]ruise [C]onsultants who participated in Defendant's training period pay plan" during the period in question ("the

---

[3] Section 7(i) of the FLSA states as follows:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C.A. § 207(i).

Collective Settlement Class"). *See id.* (noting the similarities between the putative class members and "incorporate[ing] by reference the terms and conditions of the [p]arties' Stipulation"). The parties also agreed to a 60-day opt-in period, which closed on May 21, 2018. Joint Status Report & Request for Early Settlement Conference ("May 24 Joint Status Report") ¶ 3, May 24, 2018, ECF No. 34. During that time, seven additional former employees filed consents to join the action.[4]

Plaintiffs and Defendant eventually reached a Settlement Agreement, and on October 26, 2018, Plaintiffs filed an unopposed motion seeking preliminary approval of their Settlement Agreement. *See* Pls.' Unopposed Mot. for Preliminary Approval. The Settlement Agreement contemplates certification of a settlement class consisting of 54 individuals who worked for Defendant as Cruise Consultants during the period in question. Settlement Agreement 17-18. In very basic terms, the Settlement Agreement requires Defendants to pay a maximum amount of $60,000.00 to be divided as follows: (1) $11,000.00 for unpaid wages to be divided among the participating class members; (2) $11,000.00 for liquidated damages to be divided among the participating class members; (3) $6,000.00 total for incentive payments to be divided among Plaintiff Alloways ($2,000.00), Plaintiff McGhee ($2,000.00), Plaintiff Higginson ($1,000.00), and Plaintiff Cade ($1,000.00); and (4) $32,000.00 in attorneys' fees and expenses to be paid to class counsel and (where applicable) to each participating class member. *Id.* at 6. The amount of

---

[4] On April 10, 2018, Plaintiffs Carl Lucas, Kevin Martin, Gibson Lepper, Derek Cade, Patrice Ndozi, and Robert Pompeo all filed consents to become part of the class. *See* Notices of Consent to Become a Party Pl., ECF Nos. 26-31. On May 3, 2018, Plaintiff Tiffany Francois filed a consent to join the class as well. *See* Notice of Consent to Become a Party Pl., ECF No. 32. Plaintiff Gordon Klaiber ("Klaiber") had already been added to the lawsuit on October 12, 2017. *See* Notice of Consent to Become a Party Pl., ECF No. 6. On July 2, 2018, Robert Pompeo withdrew his consent to be a member of the class. *See* Notice of Withdrawal of Consent to Be a Party Pl., ECF No. 38.

unpaid wages and liquidated damages each class member would be entitled to would be calculated individually. *Id.* This matter was then referred to the undersigned for all further proceedings. After a telephone conference, the Court issued an order granting the motion and preliminarily approving the Settlement Agreement. The Preliminary Approval Order conditionally certified the following class pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b) (the "Rule 23 Settlement Class"):

> Every Cruise Consultant who participated in Defendant's training period commission pay plan at any time between September 21, 2014 and February 22, 2018.

The Preliminary Approval Order appointed Plaintiffs Alloways, Higginson, and McGee as class representatives. The Preliminary Approval Order also appointed The Law Offices of Peter T. Nicholl as class counsel and RG/2 Claims Administration LLC ("RG/2 Claims") as claims administrator. Finally, the Preliminary Approval Order approved the notice forms provided by the parties; instructed the parties to comply with the notice protocols set forth in the Settlement Agreement; and set a date for the Fairness Hearing.

On February 25, 2019, Plaintiffs filed their Unopposed Motion for Final Approval. The Fairness Hearing was held on March 3, 2019, at 10:00 a.m., after which the parties submitted supplemental information as requested by the Court. *See* Def.'s Supplemental Statement in Supp. of Unopposed Mot. for Final Approval; Pls.' 2d Supplement in Supp. of Their Unopposed Mot. for Final Approval.

## II. Analysis

After carefully considering the terms of the Settlement Agreement, Plaintiffs' Unopposed Motion for Final Approval, the supplemental materials in support thereof, and the statements of counsel for both parties at the Fairness Hearing held on March 3, 2019, the Court now addresses

whether the proposed class should receive final certification; whether the Settlement Agreement is fair, reasonable, and adequate; whether the Settlement Agreement represents a fair compromise of a *bona fide* FLSA dispute; and whether class counsel's request for attorneys' fees and costs, as well as an incentive payment for certain individual plaintiffs, should be granted. Each of these issues will be addressed in turn.

## A. Final Certification of the Settlement Class

In seeking approval of the proposed Settlement Agreement, the parties are resolving a "hybrid wage-and-hour law case" due to the combination of collective action claims raised under the FLSA and state law claims brought as a class action under Federal Rule of Civil Procedure 23 ("Rule 23"). *See Edelen v. Am. Residential Servs., LLC,* No. Civ. A. DKC 11-2744, 2013 WL 3816986, at *3 (D. Md. July 22, 2013); *see also Shaver v. Gills Eldersburg, Inc.,* Civ. No. 14-3977-JMC, 2016 WL 1625835, at *1 (D. Md. Apr. 25, 2016). As a result, this Court must assess the request for final class certification under two separate standards. *See Edelen*, 2013 WL 3816986, at *3.

### 1. Certification of the Collective Settlement

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.,* 532 F. Supp. 2d 762, 771 (D. Md. 2008). The statute provides in relevant part:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). This requirement that potential plaintiffs provide the court with their affirmative consent to be a part of the suit is known as "an 'opt-in' scheme." *Edelen*, 2013 WL

3816986, at *3 (citing *Quinteros*, 532 F. Supp. 2d at 771). Determining whether to certify a collective action under the FLSA is a two-stage process. *Id.* (citing *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010). Stage one requires "a 'threshold determination' [ ] be made regarding 'whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to the putative class members would be appropriate." *Id.* (quoting *Syria*, 756 F. Supp. at 686) (internal quotation marks omitted); *see also Shaver*, 2016 WL 1625835, at *2 ("Preliminary approval should be granted when a proposed settlement is 'within the range of possible approval,' subject to further consideration after a final fairness hearing . . . .").

Here, Judge Messitte issued an order finding that Plaintiffs "made the required 'modest factual showing' that they are 'similarly situated' to other cruise consultants working for Defendant during their six-month training periods." Order Approving Conditional Certification of Class ¶ 7. This conditional certification was "limited to Plaintiffs' allegation that Defendant's Training Period Commission Plan violates the FLSA." *Id.* at ¶ 7 n.2. Accordingly, Plaintiffs have meet the requirements of the first stage of the evaluation for final approval of their Collective Settlement Class.

The second stage of the evaluation requires "a 'more stringent inquiry' . . . to determine whether the plaintiffs are, in fact, 'similarly situated' . . . ." *Edelen*, 2013 WL 3816986, at *4 (citing *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)). Even in situations where settlement agreements have been made, the court must still make a final determination on whether to certify the class. *See id.* In doing so, courts consider a variety of factors, including: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each

plaintiff; and (3) fairness and procedural considerations." *Rawls*, 244 F.R.D. at 300 (internal quotation marks omitted) (discussing the "decertification" process). Due to the overlap between class certifications under Rule 23 of the Federal Rules of Civil Procedure, "these factors need only be 'address[ed] . . . in passing.'" *Edelen*, 2013 WL 3816986, at *4 (citations omitted).

Here, the claims of each member of the Collective Settlement Class have the same factual underpinning. Each member was employed in the same position (Cruise Consultant) and went through the same training period, during which they were allegedly compensated by the same commission payment plan. The class as a whole is therefore "similarly situated" to the representative Plaintiffs. Additionally, Defendant has not raised any defenses that are individualized in nature. *See* Def.'s Answer 16-19. "In any event, individualized defenses typically raise concerns because they pose case management problems; such complications are largely irrelevant where a collective class is being certified for settlement purposes." *Edelen*, 2013 WL 3816986, at *5 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Finally, with respect to fairness, a settlement resolving the FLSA claims of all Cruise Consultants who went through the six-month training period is an effective and efficient means of resolving the common issue of the legality of the Defendant's commission payment plan.

In sum, the Court finds that Plaintiffs are similarly situated to the members of the Collective Settlement Class and, accordingly, final certification pursuant to Section 216(b) of the FLSA is warranted.

### 2. Rule 23 Class Certification

Certification as a class action under Rule 23 is also a two-stage process: a class must meet the four prerequisites under Rule 23(a) and fall within one of the three subdivisions of Rule 23(b). *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 345-46 (D. Md. 2012). When parties

seek to settle a case on behalf of a Rule 23 certified class, the court is required to "'pay undiluted, even heightened attention' to class certification requirements . . . ." *Edelen*, 2013 WL 3816986, at *5 (citing *Amchem Prods.*, 521 U.S. at 620 (internal quotation marks omitted)). This Court has already preliminarily approved the certification of the proposed Rule 23 Settlement Class. *See* Preliminary Approval Order. Accordingly, it will now consider the proposed Rule 23 Settlement Class with heightened attention to the requirements laid out in Rule 23.

### a. Rule 23(a) Prerequisites

Under Federal Rule of Civil Procedure 23(a),

> One or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Calderon*, 279 F.R.D. at 345 (citing Fed. R. Civ. P. 23(a)). Based on a review of the parties' submissions and counsel's representations during the Fairness Hearing, the Court finds the Rule 23 Settlement Class meets the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a).

<u>Numerosity</u>

The inquiry of numerosity is not simply one of numbers as there is no set threshold by which a class is deemed numerous enough to meet this first requirement. *See Edelen*, 2013 WL 3816986, at *5. Rather, the inquiry must look to whether it would be "impracticable" to join each individual member's case. *Craighead v. Full Citizenship of Maryland, Inc.*, No. CV PX-17-595, 2018 WL 3608743, at *2 (D. Md. July 27, 2018) (citation omitted). In making this determination, the court considers factors such as "the possible geographic disbursal of the

claimants, the small size of individual claims, and the inconvenience of trying multiple suits." *Id.* at *3 (quoting *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006)).

Here, the proposed class is comprised of 54 individuals, less the two who have already opted-out of the class. *See* Settlement Agreement. While not dispositive, courts in this district have previously determined that classes this size raise a presumption of numerosity. *Craighead*, 2018 WL 3608743, at *2 ("Indeed, classes with 25 to 30 members have sufficed to raise the presumption that the numerosity requirement is met.") (citing case); *see also, e.g.*, *Edelen*, 2013 WL 3816986, at *5 (finding a class met the numerosity requirement in part because it consisted of 59 individuals) (citing cases). Turning to whether joinder of these 54 members' cases would be impractical, the Court notes that the parties are disputing a relatively small amount of money per individual. According to the settlement administrator, "the allocation of the Net Settlement Amount among Class Members will yield an average payment of $407.41 and the highest Class Member settlement award is $1,382.03." Declaration of Melissa E. Baldwin ("Baldwin Declaration") ¶ 10, ECF No. 50-2, Ex. 1. The small value of the individual claims would dissuade bringing 54 separate claims and moving for joinder later as the accumulation of court and attorneys' fees would render such actions impracticable. *See Edelen*, 2013 WL 3816986, at *5. Accordingly, the Court finds the proposed class to be sufficiently numerous.

Commonality

"To establish commonality, the party seeking certification must 'demonstrate that the class members have suffered the same injury' and that their claims 'depend upon a common contention.'" *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted)). However, this determination "does not require total identity of class

claims, but rather looks to whether class members share common factual or legal issues that unify the case." *Craighead*, 2018 WL 3608743, at *3 (citation omitted). This commonality "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Edelen*, 2013 WL 3816986, at *5 (quoting *Dukes*, 564 U.S. at 349-50).

Here, success for every class member's remaining claim hinges entirely on whether Defendant's Training Period Commission Plan violates the FLSA and MWHL. Accordingly, as all the proposed class members have claims raising the same legal issue the resolution of which would resolve every one of their remaining claims "in one stroke," the Court finds the commonality requirement has been met. *Id.*

Typicality

"The typicality requirement concerns whether the named plaintiffs' claims are aligned and consistent with those of the class." *Craighead*, 2018 WL 3608743, at *3 (citing Fed. R. Civ. P. 23(a)(3)). While the analysis of typicality tends to merge with that of commonality, it is still a distinct prerequisite concerning the individual representative party's claims. *Id.* The typicality requirement "goes to the heart of a representative part[y's] ability to represent a class." *Deiter v.. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). A representative party's claim does not need to be identical to those of the rest of the class, "so long as any variation does not 'strike[ ] at the heart of the respective causes of actions.'" *Edelen*, 2013 WL 3816986, at *6 (citing *Deiter*, 436 F.3d at 467).

Here, the proposed representatives' individual claims rest upon the exact same legal contention as every member of the proposed class: namely, the legality of Defendant's Training

Period Commission Plan. As all member of the class and Plaintiffs share the same interest in finding that the Training Period Commission Plan does in fact violate the FLSA and MWHL, Plaintiffs have meet the typicality requirement. Furthermore, the fact that Plaintiffs may claim that they were denied more or less compensation than another class member does not change this analysis as the necessity for a legal determination in their favor remains the same. According, the Court finds the typicality prerequisite is met.

<u>Adequacy of Representation</u>

Finally, the court inquires whether a class is adequately represented by the representative party by looking at both the representative Plaintiffs and class counsel. *Craighead*, 2018 WL 3608743, at *5. "Representation is adequate if: (1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Edelen*, 2013 WL 3816986, at *6; *see also Craighead*, 2018 WL 3608743, at *5 ("At base, the Court is centrally concerned with 'whether the absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone that shares their interests.'" (citations omitted)).

Here, as previously stated, Plaintiffs and members of the proposed class all possess the same interest in resolving the question concerning the legality of Defendant's Training Period Compensation Plan in their favor. Further, there is no indication that Plaintiffs' interests are at all at odds with the other members of the class. Additionally, the Court finds that Plaintiffs' counsel are sufficiently qualified, experienced, and capable of representing the interests of the class. Plaintiffs' supplemental filings are somewhat vague on details of the cases its counsel has handled to date. However, Plaintiffs did provide a case as an example of similar attorney's fees awards that was handled by the same lead counsel as in the instant matter. *See Jackson v.*

*Reliasource, Inc.*, No. CV WMN-16-358, 2017 WL 3216822 (D. Md. July 28, 2017), *dismissed*, No. 17-2042, 2018 WL 1224414 (4th Cir. 2018)). Further, this Court has observed Plaintiffs' lead counsel during both settlement conferences and hearings and is satisfied that his efforts were aimed at resolving the matter in the best interests of the class. Therefore, the Court finds the prerequisite of adequate representation to be met.

### b. Rule 23(b) Requirements

In contrast to Rule 23(a), a class need only fit within one of the three Rule 23(b) requirements. Of relevance to this proceeding is Rule 23(b)(3), which permits a class action to be maintained "if [1] 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Calderon*, 279 F.R.D. at 345-46 (citations omitted). "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations. Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." *Edelen*, 2013 WL 3816986, at *7 (citations omitted). The second prong of the inquiry is the "superiority prong." *Id.* Factors the court considers are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, Plaintiffs have alleged they fall under Rule 23(b)(3). As set forth above, all members of the Rule 23 Settlement Class present the same legal question. Specifically, whether

or not Defendant's Training Period Commission Plan is legal under the FLSA and MWHL. While determining how much each member is owed in terms of damages does require individual calculations, this issue can be easily resolved without separate trials. The question of the legality of commission payment plan is still the "qualitatively overarching issue by far." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (unpublished table decision). Accordingly, the Court finds the Rule 23 Settlement Class satisfies the predominance inquiry.

Regarding the superiority prong of the assessment, each of the factors laid out in Rule 23(b) weighs in favor of final certification. First, the potential amount of damages each individual member would be able to recover is small in comparison to the cost of maintaining a lawsuit. Such situations "giv[e] rise to a strong interest in class litigation." *Edelen*, 2013 WL 3816986, at *7. Second, the parties' have represented that there is no pending litigation filed by any individual concerning Defendant's Training Period Commission Plan. *See* Pls.' Mem. of Law in Supp. of Their Unopposed Mot. for Final Approval ("Pls.' Mem. in Supp. for Final Approval") 18. Third, concentrating the litigation in the Southern District of Maryland is desirable given the fact that all parties, including Defendant, are located in Maryland. *See id.* Fourth, "manageability concerns are irrelevant when a class is being certified only for settlement purposes." *Edelen*, 2013 WL 3816986, at *7.

To summarize, because the Rule 23 Settlement Class satisfies the requirements of both Rule 23(a) and 23(b)(3), final certification will be granted.

### B. Final Approval of the Settlement Agreement

Upon approving final certification of the Collective Settlement Class and the Rule 23 Settlement Class, the Court will now address the terms of the Settlement Agreement specifically. As was the situation with determining class certification, "because of the hybrid nature of this

case, two standards are implicated" by Plaintiffs' Unopposed Motion for Final Approval. *Edelen*, 2013 WL 3816986, at *8.

### 1. Fairness, Reasonableness, and Adequacy Under Rule 23

Rule 23 requires that the court approve any settlement of a class action. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citing cases). Accordingly, "the court may approve [a settlement agreement that binds class members] only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2). "The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement, while the 'adequacy' prong focuses on the agreement's substantive propriety." *Edelen*, 2013 WL 3816986, at *8 (citation omitted).

### a. Fairness

In evaluating the fairness of a proposed settlement, the court must determine whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. To do so, the court looks at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [particular] area of [ ] class action litigation." *Id.*

Here, each of the fairness factors indicates that this agreement was reached without collusion and weighs in favor of final approval. First, while this case was pending for just over a year before the parties agreed to settle, procedurally it is still in the relatively early stages of litigation. Second, while no formal discovery has taken place, "the parties did exchange

information and documents informally regarding Defendant's training commission plan and information concerning Plaintiffs' and the class' pay and hours worked." *See* Pls.' Mem. of Law in Supp. of Their Unopposed Mot. for Final Approval ("Pls.' Mem. in Supp. for Final Approval"), Feb. 25, 2019, ECF No. 50-1. The bulk of the parties' efforts over the course of that year appear to have been focused on ensuring notice was properly sent out to all members of the proposed class and negotiating the Settlement Agreement. Third, there is no indication that negotiations between the parties were anything other than arm's length. They participated in a settlement conference before the undersigned and "continued to negotiate for a period of four (4) months" before submitting a status report informing the Court of their settlement. Pls.' Mem. in Supp. for Final Approval 7. Finally, Plaintiffs have submitted various attestations of the credentials of their counsel. In the memorandum they supplied in support of the instant motion, Plaintiffs state that "[t]he Law Offices of Peter T. Nicholl is recognized as a leader in employment and class action litigation . . . ." *Id.* Plaintiffs also submitted supplemental materials discussing the credentials of the various members of the litigation team who worked on this case. *See* Pls.' 2d Supplement in Supp. of Their Unopposed Mot. for Final Approval. While these filings were vague in details, the lead counsel has 13 years of practice "successfully litigat[ing] dozens of wage and hour cases, including complex class and collective actions." *Id.* at 2. Plaintiffs also provided a citation to a prior case handled by the same lead counsel. *See Jackson*, 2017 WL 3216822. The Court is satisfied that this experience makes Plaintiffs' counsel sufficiently competent in the area of class action litigation to provide proper representation and ensure that the settlement is in the best interests of Plaintiffs as well as the class. Accordingly, the Court finds the Settlement Agreement meets the fairness prong requirement.

### b. Adequacy

The adequacy prong looks at (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. "The purpose of the adequacy analysis is to 'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *Edelen*, 2013 WL 3816986, at *9 (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)).

Overall, the adequacy factors weigh in favor of final approval of the Settlement Agreement. First, Plaintiffs present a persuasive case concerning Defendant's practices of compensation. As discussed above, Plaintiffs' case is premised on the argument that Defendant's Training Period Commission Plan violates the FLSA and MWHL. For the first six (6) months of their employment, each Cruise Consultant received the same set amount of payment on a bi-weekly basis regardless of the number of sales they made. Pls.' Mem. of Law in Supp. of Their Unopposed Mot. for Preliminary Approval ("Pls.' Mem. in Supp. for Preliminary Approval") 3, ECF No. 46-1. According to Plaintiffs, this fixed sum was a salary and, as a result of this payment plan and the number of hours each individual worked, Plaintiffs asserted that they were entitled to overtime. *Id.* at 3-4. This argument is premised on the caveat to the exception where a commission plan is "not *bona fide*" if the individual employee, "in fact, always or almost always earns the same fixed amount of compensation for each workweek . . . ." *Id.* at 4 (citing 29 C.F.R. 779.416(c)). Second, while the merits of Plaintiff's case appear well-reasoned, Defendant presents an equally strong defense. According to Defendant, Cruise

Consultants are "exempt from overtime pursuant to Section 7(i) of the FLSA and the related provision under Maryland law" as they are being paid solely based on commission. *Id.* at 5. Defendant argues that its Training Period Commission Plan is still a *bona fide* commission plan as each employee's pay is a "draw based upon a commission target up to $17,500, and the company's experience concerning what new consultants could reasonably expect to earn during the training period . . . ." *Id.* at 5 (citing 29 C.F.R. § 779.416(a)). The fact that a Cruise Consultant may recover less than or more than the actual amount of sales made does not change the nature of the payment plan. *Id.* at 6-7 (citing 29 C.F.R. § 779.416(a)) (stating that "[u]nder a *bona fide* commission, plan all of the computed commissions will be counted as compensation representing commissions even though the amount of commissions may not equal or exceed the guarantee or draw in some workweeks"). The Court finds that "[t]he existence of these disputed legal and factual issues creates uncertainty and risk for all parties moving forward." *Edelen*, 2013 WL 3816986, at *9. Third, as previously noted, this case is still in the relatively early procedural stages. Accordingly, if the case were to continue forward in litigation it could be a drawn out and expensive process. Thus far the parties have stipulated to conditional certification and preliminary approval for purposes of settlement. If the settlement were to fall through, the parties would have to engage in motion practice concerning final class certification, formal discovery, and dispositive motions, not to mention trial. All of this would amount to significant legal costs. Fourth, the parties attest to the fact that "[t]here is no evidence to date that Defendant is experiencing financial troubles that would prevent it from satisfying a judgment." Pls.' Mem. in Supp. for Preliminary Approval 8. Finally, there has been no opposition to the Settlement Agreement. Consistent with the Preliminary Approval Order and the terms of the Settlement Agreement, the settlement administrator sent personalized notice forms by First Class

Mail to all 54 members of the Rule 23 Settlement Class on January 4, 2019. *See* Baldwin Declaration at ¶¶ 4-5. The notice form and method conformed with the requirements of Federal Rules of Civil Procedure 22(c)(2) and 23(e). The deadline to file objections or opt-out was February 4, 2019. *Id.* at ¶ 6. To date, no objections have been received and only two individuals filed requests to opt-out. *Id.* at ¶¶ 8-9. Further, no member of the putative class appeared at the Fairness Hearing to raise an objection. In light of the aforementioned factors, the adequacy prong of the assessment supports final approval.

In sum, the Settlement Agreement appears to be fair, adequate, and reasonable such that final approval under Rule 23 is warranted.

### C. Reasonable Settlement of *Bona Fide* Dispute

Approval of a settlement agreement for an action brought pursuant to Section 216(b) of the FLSA requires the court to utilize a different standard. The court must find that "the agreement represents a 'reasonable compromise of disputed issues; rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Edelen*, 2013 WL 3816986, at *10 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). Courts in the Fourth Circuit typically apply the rule laid out in the Eleventh Circuit's case, which states that "an FLSA settlement generally should be approved if it reflects a 'fair and reasonable resolution of a *bona fide* dispute over FLSA provisions.'" *Id.* (citing cases). First, the court must determine whether the parties' dispute actually concerns FLSA issues. *Id.* Second, the terms of the settlement agreement are assessed for "fairness and reasonableness." *Id.* In the Fourth Circuit, this assessment uses the same factors considered for settlements under Rule 23. *Id.*

Here, a *bona fide* dispute exists. First, as discussed in more detail in the previous section, the parties remain at odds over the legality of Defendant's Training Period Commission Plan. *See* Pls.' Mem. in Supp. of Unopposed Mot. for Preliminary Approval 3-8. While they have agreed to settle this lawsuit, neither party has conceded their position on the matter. *See* Pls.' Mem. in Supp. of Unopposed Mot. for Final Approval 10. As Plaintiffs elected not to pursue their claims for the rest of their employment with Defendant, whichever legal assessment of the Training Period Commission Plan prevails would determine whether Plaintiffs recover anything. Accordingly, to recover the amount outlined in the Settlement Agreement represents both a win for Plaintiffs as well as a reasonable amount for Defendant to resolve the issue considering the uncertainty and cost of trial. Plaintiffs also sought liquidated damages, which would have required a showing that Defendant willfully underpaid its employees, something that it disputes. *Id.* Second, as discussed, consideration of the Rule 23(e) factors establishes the fairness and reasonableness of the Settlement Agreement. Accordingly, the Settlement Agreement will be approved as a fair and reasonable resolution of a *bona fide* dispute.

### D. Attorneys' Fees & Costs

While the FLSA mandates the payment of attorney's fees and costs where plaintiffs prevail on their claims, and the MWHL allows for recovery of the same as well, the Court still retains discretion over the amount. *See Edelen*, 2013 WL 3816986, at *11-12. Even in situations where the parties have come to an agreement as to how much of the attorney's fees and costs will be reimbursed, the Court still retains a duty to assess the reasonableness of the award. *Id.* at *11. A reasonableness assessment for attorney's fees begins with the "lodestar" method. *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). This involves determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

rate." *Edelen*, 2013 WL 3816986, at *11 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In order to determine these numbers, the Court will examine several factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir.2009) (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an entire appendix listing "Rules and Guidelines" for how parties are to request reimbursement of fees. Local Rules, App. B (D. Md. Dec. 1, 2018). "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson*, 560 F.3d at 243-44 (citation omitted). Once the lodestar figure is determined, the Court will subtract the "'fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir.2002)). Lastly, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks and citation omitted).

The Settlement Agreement states that the parties agreed to a total payment of $32,000.00. While Plaintiffs' counsel avers that it incurred more than that in actual fees and costs, the agreed to amount would constitute compensation in full for all fees and costs incurred throughout the pendency of this proceeding. Settlement Agreement 5.

### 1. Lodestar

### (1) Time and Labor Expended

The amount of "time and labor expended" by counsel on a particular case is an essential starting point for assessing the reasonableness of the total amount of fees requested. Accordingly, detailed information concerning what counsel was doing during the hours they billed for a client's case is necessary for the Court to make an accurate assessment. *See United Food & Commercial Workers Unions v. Magruder Holdings, Inc.*, No. GJH-16-2903, 2017 WL 3129192, at *4 (D. Md. July 21, 2017) (noting the movant attached "a summary of the legal services performed in the matter, broken down into date, attorney, narrative of the task, hours expended, and fees charged" but directing the movant to resubmit the filing "organized by litigation phase" as required by the Local Rules).

Here, Plaintiffs' Counsel has submitted multiple filings attesting to the time and labor expended upon this case. Among them is a time log that includes for each entry the date, a description of the task completed, the name of the attorney completing the task, and the exact amount of time expended. *See* Pls.' Supplement in Supp. of Their Unopposed Mot. for Approval of the Class Action Settlement ("Pls.' Supplement in Supp."), "Time Entries," Jan. 23, 2019, ECF No. 49-1. These entries were separated into categories as outlined in the Local Rules. According to Plaintiffs' submissions, its counsel expended 214.80 hours on approximately fifteen (15) months of representation in this case. *Id.* After reviewing this time log, the Court finds the amount of time expended to be reasonable considering the number of clients, the novelty of the legal issue, and the procedural posture of the case.

### (2) Novelty and Difficulty of Questions Raised

As previously discussed, the major legal conflict in this case concerns the legality of the Training Period Commission Payment Plan and whether it falls under the Section 7(i) exception in the FLSA. Plaintiffs' counsel states that "[t]he pay structure itself was novel and the question of whether the commission sales exemption would apply was wholly unique." Pls.' Supplement in Supp. 3. The parties have directed the Court to no examples of prior similar cases; while the Court did find a few cases dealing with this particular exception, each one concerns a factually unique situation. *See, e.g.*, *Herrera v. TBC Corp.*, 18 F. Supp. 3d 739 (E.D. Va. 2014). Accordingly, the Court is satisfied as to the uniqueness of the central legal issue in this matter.

### (3) Skill Required

This case presented the necessity of a nuanced interpretation of the FLSA, and in particular, knowledge of Section 7(i) and its exceptions. Plaintiffs' counsel attests that "[h]ad it not been for [their] substantial knowledge of the 7(i) commission sales exemption and experience with prior cases involving said exemption, Plaintiffs might not have been able to identify the alleged flaw in Defendant's payment structure that became the basis of Plaintiffs' complaint." Pls.' Supplement in Supp. 3. Therefore, the Court is persuaded that successful identification of the key legal issue in this matter required familiarity and skill in wage and hour law.

### (4) Opportunity Costs

When an attorney takes on a case, it is expected that it would prevent them from following up on other opportunities. Plaintiffs' counsel states it "suffered opportunity

costs" due to the time it spent on this matter and supports this statement with time logs. *Id.* at 4.

### (5) Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work the attorney seeks to be reimbursed. For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates. *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Here, Plaintiffs submitted supplement that outlined the hourly rates charged for the work of each member of the litigation team. *See* Pls.' 2d Supplement in Supp. of Their Unopposed Mot. for Final Approval. All these rates fall within the ranges outlined in the Local Rules. Further, as previously stated, Plaintiffs' Counsel will be reimbursed less than the total amount of fees and cost they incurred. Accordingly, the Court finds these rates to be reasonable. *See Gonzales*, 2001 WL 3886979, at *2.

### (6) Attorney's Expectations at Outset

Plaintiffs' counsel attests to the fact that they took this case on a contingency basis, which means they undertook the risk of getting nothing in return for their efforts. Pls.' Supplement in Supp. 4. Further, Plaintiffs' counsel will have to absorb some of the costs as the Settlement Agreement in only reimbursing part of the attorneys' fees incurred.

### (7) Time Limitations Imposed

Plaintiffs state that there were no "unusual time limitations or deadlines" present in this litigation. *Id.*

### (8) Amount in Controversy and Results Obtained

Plaintiffs were successful in their suit insofar as they are recovering a net award of between $407.41 and $1,382.03. As is the situation with any litigation, there was always the possibility Plaintiffs would recover nothing for their efforts. Further, Plaintiffs acknowledge that their potential awards would always have been limited to some extent "[d]ue to the accurate payroll and time data provided by Defendant . . . ." *Id.* While the Court was not privy to this information, it is notable that the training period at issue was only six (6) months long and Defendant had a strong argument against an accusation that it willfully underpaid Plaintiffs.

### (9) Attorney's Experience, Reputation and Ability

As previously stated, the Court found that Plaintiffs' counsel are sufficiently qualified, experienced, and capable of representing the interests of the class as a whole. While Plaintiffs' filings are somewhat vague on details of the cases its counsel has handled to date, they do attest that they are "highly skilled and experienced firm in the field of FLSA litigation." *Id.* Further, the Court has observed Plaintiffs' lead counsel during both settlement conferences and hearings and is satisfied that the level of skill and ability he presented is sufficient to merit an award of attorneys' fees.

### (10) Undesirability of the Case

Plaintiffs state in their filings that, due to the complexity of the legal issue and the low amount that they would have likely been able to recover at trial, this case was not highly desirable to other attorneys in this area of law. *Id.* at 5.

### (11) Professional Relationship

Plaintiffs state that they had no professional relationship with their counsel prior to the commencement of this matter. *Id.*

### (12) Attorneys' Fees Awards in Similar Cases

In its filings, Plaintiffs provided citations to cases where "comparable awards for attorney's fees granted in matters with far less significant results." Pls.' Supplement 5 (citing to *Almendarez v. J.T.T. Enterprises Corp.*, No. CIV. JKS 06-68, 2010 WL 3385362 (D. Md. Aug. 25, 2010) and *Jackson*, 2017 WL 3216822. The cases cited by Plaintiffs do provide examples of where attorney's fees awards were significantly larger than what the plaintiff recovered. *See, e.g.*, *Almendarez*, 2010 WL 3385362 (awarding $97,253.74 in costs and fees where three (3) plaintiffs recovered approximately $7,000.00) and *Jackson*, 2017 WL 3216822 (awarding $163,392.00 where a single plaintiff was awarded $19,253.74),

In light of the aforementioned factors, the Court finds the amount of fees the parties agreed would be reimbursed to be reasonable.

### 2. Unsuccessful Claims Reduction

As previously mentioned, Plaintiffs' suit originally focused on both the commission payment plan for the Cruise Consultants' training period as well as the post-training period of employment. Pls.' Compl. ¶¶ 74, 83. However, approximately four (4) months after commencing this case, Plaintiffs voluntarily narrowed their suit to focus solely on the training period plan. Notice to Court re: Claims. It took another ten (10) months before the parties agreed to settle this matter. Accordingly, some reducing in the amount of fees to be reimbursed would be warranted. However, the Court finds that no further reduction is necessary as the

parties agreed to an amount that represents a reduction of approximately one-third of the actual amount of the fees and costs Plaintiffs' counsel incurred.

### 3. Degree of Success

As previously stated, Plaintiffs were successful in their suit insofar as they are recovering a net award of between $407.41 and $1,382.03. Plaintiffs acknowledge that their potential awards would always have been limited to some extent "[d]ue to the accurate payroll and time data provided by Defendant . . . ." Pls.' Supplement in Supp. 4. While the Court was not privy to this information, it is notable that the training period at issue was only six (6) months long and Defendant had a strong argument against an accusation that it willfully underpaid Plaintiffs. However, once again the amount that the parties agreed to represents a reduction of approximately one-third of the actual amount of the fees and costs Plaintiffs' counsel incurred. Therefore, the Court does not find it necessary to further reduce the agreed-to amount of attorneys' fees, but rather notes the reasonability of that agreement.

### E. Incentive Awards

Finally, the Court must determine whether the proposed incentive payments to certain Plaintiffs are reasonable. "Incentive payments to class representatives have been awarded in both FLSA collective actions and Rule 23 class actions." *Edelen*, 2013 WL 3816986, at *16 (listing cases). "To determine whether an incentive payment is warranted, the court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Leigh v. Bottling Grp., LLC*, No. DKC 10–0218, 2012 WL 460468, at

*7 (D. Md. Feb. 10, 2012) (observing that, in the FLSA context, incentive awards to named plaintiffs may be appropriate if "they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation").

Here, the Settlement Agreement includes an additional $6,000.00 total for incentive payments to be divided as follows: Plaintiff Alloways ($2,000.00), Plaintiff McGhee ($2,000.00), Plaintiff Higginson ($1,000.00), and Plaintiff Cade ($1,000.00). Pls.' Unopposed Mot. for Preliminary Approval ¶ 4. These amounts are in addition to the settlement payments for unpaid wages each individual is entitled to recover. In the motion, Plaintiffs' counsel argues that each named Plaintiff is entitled to an incentive payment as outlined "in recognition of their efforts initiating this lawsuit, participation in the settlement process and enhanced litigation position having opted-in to this case prior to conditional certification." Pls.' Mem. in Supp. of Unopposed Mot. for Final Approval 21. Plaintiffs' counsel goes on to aver that "[t]his lawsuit was brought about because Plaintiffs were instrumental in explaining Defendant's system in a sufficient level of detail that counsel was able to identify the alleged flaw under 7(i)." *Id.* at 22. While Plaintiffs' counsel does not go into detailed specifics about the efforts undertaken by each named Plaintiff receiving an incentive award, the Court does note that Plaintiffs Alloways, McGhee, and Higginson were all part of the proceeding from its commencement. Further, a comparison of the incentive award to the average net award for each individual class member reveals these awards are relatively modest. *See, e.g.*, *Edelen*, 2013 WL 3816986 at *16 (approving a settlement agreement that included a "modest incentive payment" of $1,000.00 to the class representative, in addition to his $688.00 settlement payment, where class counsel averred to the class representative's efforts to commence the case, his help during discovery and settlement proceedings, and the fact he attended the final fairness hearing). Finally, the amount

of each incentive payment is similar to those approved in other hybrid FLSA collective action and MWHL class action cases. *See, e.g.*, *id.* Accordingly, in light of Plaintiffs Alloways', McGhee's, and Higginson's participation from the outset of this proceeding, Plaintiffs' counsel's representations of the help each individual provided, and the fact the awards are relatively modest, the Court finds the incentive payments as outlined in the Settlement Agreement to be reasonable and will therefore approve them.

## II.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Unopposed Motion for Final Approval, **APPROVES** the parties' Settlement Agreement without modification, and orders this case be **DISMISSED WITH PREJUDICE**. In making this decision, the Court offers no opinion on the merits of Plaintiff's underlying claims or Defendants' raised defenses.

April 29, 2019                                        _____/s/_____
                                                                          Charles B. Day
                                                                          United States Magistrate Judge

CBD/clc